**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| YUSUF A. EASLEY, | ) | No. EDCV 06-197 CW |
| | ) | |
| Plaintiff, | ) | DECISION AND ORDER |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned magistrate judge.  Plaintiff seeks review of the denial of disability benefits.  The court finds that judgment should be granted in favor of defendant, affirming the Commissioner's decision.

### I. BACKGROUND

Plaintiff Yusuf Easley was born on September 2, 1986, and was five years old when he was awarded child's supplemental security income ("SSI") benefits, due to attention deficit disorder and hyperactivity. [Administrative Record, "AR," 54.]  Upon reaching the

age of eighteen, plaintiff's continuing eligibility for SSI was redetermined under the regulations pertaining to adult disability applications. [AR 44; see 20 C.F.R. § 416.987.] The Commissioner determined that plaintiff was no longer disabled as of December 1, 2004. [AR 45.] Plaintiff, who completed the eleventh grade through special education, alleges continuing disability on the basis of attention deficit/hyperactivity disorder, a learning disorder and asthma. [AR 38, 44.]

## II.   PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on February 22, 2006, and filed on March 2, 2006. On August 23, 2006, defendant filed an answer and plaintiff's Administrative Record ("AR"). On November 1, 2006, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III.   PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff was determined to be no longer disabled as of December 1, 2004, pursuant to a redetermination of his eligibility for SSI benefits upon reaching the age of eighteen. [AR 44-45.] Plaintiff requested an administrative hearing, which was held on March 16, 2005, before Administrative Law Judge ("ALJ") F. Keith Varni. [Transcript, AR 525.] Plaintiff appeared without counsel, and testimony was taken from plaintiff, his mother and step-father, and vocational expert Sandra Fioretti. [Id.] In a decision dated April 26, 2005, the ALJ found that plaintiff was not disabled under the adult criteria for disability and, thus, his eligibility for disability benefits ceased as of December 1, 2004. [AR 41.] When the Appeals Council denied

review on January 20, 2006, the ALJ's decision became the Commissioner's final decision. [AR 3.]

### IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence.  However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits.  See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir.  2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  Id.  To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  Id.  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

## V. DISCUSSION

### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist

claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

Here, the ALJ found that plaintiff had never engaged in substantial gainful activity (step one); that plaintiff had "severe" impairments, namely a mental impairment based on limited cognitive function, a behavioral disorder and substance abuse of marijuana (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 38, 40.] Plaintiff was found to have an RFC without exertional limits but a restriction to routine and repetitive, entry level, minimally stressful work requiring no contact with the general public and only superficial interpersonal contact. [AR 38.] Although plaintiff had no past relevant work (step four), the ALJ adopted the opinion of the vocational expert, who testified that a person with plaintiff's functional capacity could perform work existing in significant numbers

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

in the national economy, such as a truck driver's helper, packager and kitchen helper (step five). [AR 40.]  Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [Id.]

**C.   ISSUES IN DISPUTE**

The parties' Joint Stipulation identifies three disputed issues:

1. Whether the ALJ properly considered the opinion of a treating psychiatrist;
2. Whether the ALJ properly considered plaintiff's credibility; and
3. Whether the ALJ properly considered plaintiff's medication side effects.

[JS 2-3.]

**D.   ISSUE ONE: DR. MOON**

In October 2003, plaintiff, seventeen years old, was involuntarily hospitalized for 72 hours after being assessed as a "danger to others." [AR 396.]  It was reported that plaintiff, who lives with his mother and step-father, threw a brick at his window and slashed his mattress and blanket with a knife. [AR 396, 422.]  Dr. Eliot Moon noted that plaintiff had no prior psychiatric hospitalizations, but he had a history of taking Wellbutrin, Concerta and methylphenidate for his attention-deficit and hyperactivity disorders, and the medication had been discontinued for "a couple of months" prior to the hospitalization. [AR 396.]  Dr. Moon reported that plaintiff's agitation and violence at home had worsened since his Concerta had been discontinued and that plaintiff had been using marijuana. [AR 397.]  During the hospitalization, it was reported that plaintiff had refused to take his medication for at least the prior two weeks, and plaintiff admitted noncompliance with his medications

6

because "I don't need to take them." [AR 414, 417, 418, 422.]  Upon plaintiff's discharge from the hospital, Dr. Moon wrote that plaintiff's "mood and affect were appropriate at the time of discharge" and that plaintiff's prognosis was "fair with continued outpatient treatment and compliance." [AR 397.]  Plaintiff points out that the ALJ's decision did not explicitly discuss or evaluate Dr. Moon's opinion pursuant to the "treating physician rule," which requires, in general, that an ALJ defer to the opinion of a medical professional who has an established treating relationship with the claimant. [JS 3.]

    As noted above, however, Dr. Moon saw plaintiff in October 2003 during plaintiff's involuntary psychiatric hospitalization, but nothing in the record indicates that Dr. Moon saw plaintiff before or after this time.  Assuming, without deciding, that Dr. Moon was plaintiff's treating psychiatrist, the doctor's assessment – which did not offer any view as to plaintiff's functional limitations other than a "fair" prognosis under a condition of treatment compliance – has limited evidentiary value, in light of the fact that plaintiff was examined by the doctor only after being involuntarily hospitalized because he was behaving erratically due to not taking his medication for at least two weeks.  According to the record, this was an isolated occurrence that failed to reflect plaintiff's day-to-day condition.  Because Dr. Moon did not have an opportunity to examine plaintiff under a condition of treatment compliance during the redetermination period, any possible error by the ALJ in failing to discuss or evaluate Dr. Moon's opinion was of no consequence to the disability determination.

**E.    ISSUE TWO: PLAINTIFF'S CREDIBILITY**

Here, plaintiff argues that the ALJ did not properly evaluate plaintiff's credibility, citing the absence of "clear and convincing" reasons to discredit plaintiff's testimony and, more specifically, the ALJ's failure to identify the testimony that was not credible and cite specific evidence undermining it. [JS 7-8.]  As noted above, plaintiff alleges disability on the basis of attention deficit/hyperactivity disorder, a learning disability and asthma.  During the administrative hearing, however, when the plaintiff was asked, "Is there anything wrong with you physically," he answered "No"; when asked whether he could perform work involving unloading boxes and stocking shelves (which plaintiff had previously done in a brief summer job), he replied "yes." [AR 532-33.]  When asked later, "What are your mental or emotional problems," plaintiff replied "I don't know" and denied having auditory hallucinations. [AR 537-38.]  In fact, plaintiff did not testify that he suffered from any impairments or symptoms that would prevent him from performing substantial gainful activity.  Accordingly, to the extent that plaintiff alleges that the ALJ failed to evaluate his subjective symptom testimony, there was no such testimony to evaluate.

Given the possibility that plaintiff's testimony may have indicated plaintiff's lack of insight or inability to communicate about his own condition, rather than the absence of a mental impairment, a broader construction of plaintiff's testimony (as suggested by plaintiff) to include the general allegations forming the basis of his SSI application - "learning problems, depression, hallucinations, difficulty getting along with other people and violent behavior" [JS 7] – nonetheless would not call for a different outcome.

8

A consultative psychological evaluation conducted in November 2004 revealed that, although plaintiff did suffer from medically determinable mental impairments (namely, a disruptive behavior disorder, cannabis dependence and borderline intellectual functioning), plaintiff had no significant limitations that would prevent him from performing substantial gainful activity. [AR 440-44.] Specifically, the examining psychologist found that plaintiff had no difficulty in understanding, remembering and carrying out simple instructions; mild difficulty in carrying out detailed instructions; mild difficulty in responding appropriately to co-workers, supervisors and the general public; and no difficulty in responding appropriately to usual work situations and dealing with changes in a routine work setting. [AR 443-44.]  There is no medical evidence in the record, pertaining to the redetermination period, that refutes these findings or suggests in any way that the effects of plaintiff's mental impairments were so debilitating that he was precluded from performing any work in the national economy.  Moreover, the ALJ's RFC assessment was more restrictive than that of the examining psychologist, limiting plaintiff to routine and repetitive work with no contact with the general public and only superficial contact with co-workers. [AR 38.] Taking these limitations into account, the vocational expert identified work existing in significant numbers that plaintiff could perform. [AR 546-47.]  Under these circumstances, the ALJ's rejection of plaintiff's generalized allegations of disability, based on a conservative assessment of plaintiff's functional capacity, was supported by substantial evidence.

**F.   ISSUE THREE: MEDICATION SIDE EFFECTS**

As Dr. Moon noted, plaintiff had been taking a variety of medications for his attention deficit/hyperactivity disorder, including Wellbutrin, Concerta and methylphenidate. [AR 359, 396.] Plaintiff argues that the ALJ did not, but should have, discussed the side effects of these medications because "they would have significant ramifications as to Plaintiff's ability to maintain successful employment." [JS 11-12.]  As has been pointed out by defendant, however, there has been no allegation that any of plaintiff's medications has caused adverse side effects; rather, the ALJ noted that the treating records indicated that no side effects had been reported or observed. [JS 12-13, AR 39, 434, 492, 493.]  Because nothing in the records suggests the possibility that medication side effects had any impact on plaintiff's functional capacity, this issue does not raise a ground to warrant reversal of the ALJ's decision.

**VI.   ORDERS**

Accordingly, **IT IS ORDERED** that:

1.   The decision of the Commissioner is **AFFIRMED**.

2.   This action is **DISMISSED WITH PREJUDICE**.

3.   The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.


DATED:   November 20, 2006

_____/s/_____
        CARLA M. WOEHRLE
United States Magistrate Judge